**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
District of Oregon
**ALEXIS A. LIEN, OSB #110569**
alexis.lien@usdoj.gov
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, Oregon  97204-2902
Telephone: (503) 727-1000
Attorneys for the United States of America

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **3:19-cv-00221-MA** |
| **Plaintiff,** | |
| **v.** | **COMPLAINT, *in rem*, FOR FORFEITURE** |
| **$9,222 IN UNITED STATES CURRENCY, *in rem*,** | |
| **Defendant.** | |

Plaintiff, United States of America, by Billy J. Williams, United States Attorney for the

District of Oregon, and Alexis A. Lien, Assistant United States Attorney, for its Complaint *in rem*

for forfeiture, alleges:

I.

This Court has subject matter jurisdiction, *in rem* jurisdiction, and venue pursuant to

21 U.S.C. § 881; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610.

II.

Defendant, *in rem*, $9,222 in United States currency, was seized in the District of Oregon, and is now and during the pendency of this action will be within the jurisdiction of this Court.

III.

Defendant, *in rem*, $9,222 in United States currency, represents proceeds traceable to an exchange for controlled substances or was used or intended to be used to facilitate such a transaction in violation of 21 U.S.C. § 801, *et. seq.*, and is forfeitable to the United States pursuant to the provisions of 21 U.S.C. § 881(a)(6), as more particularly set forth in the Declaration of Special Agent Ryan Parton, Federal Bureau of Investigation, marked as Exhibit A, attached and fully incorporated herein by this reference.

WHEREFORE, Plaintiff, United States of America, prays that due process issue to enforce the forfeiture of Defendant, *in rem*, $9,222 in United States currency, that due notice be given to all interested persons to appear and show cause why forfeiture of this Defendant, *in rem*, should not be decreed; that due proceedings be had thereon; that this Defendant be forfeited to the United States; that the Plaintiff United States of America be awarded its costs and disbursements incurred in this action.

Dated this 13th day of February 2019.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*s/ Alexis A. Lien*
ALEXIS A. LIEN

**Complaint *in rem* for Forfeiture**                                                    **Page 2**

**VERIFICATION**

I, RYAN PARTON, declare, under penalty of perjury, pursuant to the provisions of 28 U.S.C. Section 1746, that I am a Special Agent with the Federal Bureau of Investigation, and that the foregoing Complaint *in rem* for Forfeiture is made on the basis of information officially furnished and upon the basis of such information the Complaint *in rem* for Forfeiture is true as I verily believe.

*s/ Ryan Parton*
RYAN PARTON
Special Agent
Federal Bureau of Investigation

## DECLARATION OF RYAN E. PARTON

I, Ryan E. Parton, do hereby declare:

## PURPOSE OF THIS DECLARATION

1.      This declaration is submitted in support of a complaint for forfeiture. The information contained in this declaration is based on an investigation I, Federal Bureau of Investigation Special Agent Ryan E. Parton, conducted, which will show that $9,222.00 in U.S. currency seized from Raul Mariscal at the Portland International Airport is subject to forfeiture pursuant to 21 U.S.C § 881(a)(6), as moneys furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate violations of 21 U.S.C. § 801, *et. seq.* Information contained in this declaration is based upon my personal observations, training, and experience, and that of other law enforcement officers. This declaration does not contain each and every fact that I know about this investigation, only those necessary to establish probable cause to believe the seized currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## AGENT BACKGROUND AND TRAINING

2.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since July 2012.  As a Special Agent with the FBI, my duties and responsibilities have included conducting criminal investigations for possible violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code.  I am currently assigned to the Portland Regional Drug and Organized Crime Task Force (hereinafter "PDX-TF").  PDX-TF is a coordinated effort by local and federal law enforcement officials to reduce illegal drug trafficking and related crimes in the Portland metropolitan area, specifically those areas directly related to air transportation.

**Declaration of Ryan E. Parton**                                    **EXHIBIT A   PAGE 1**

3.      Between July of 2012 and December of 2012, I received extensive training at the FBI Academy, Quantico, Virginia, which included topics related to the methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; the use of wiretaps; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits; the use of assets to facilitate unlawful drug trafficking activity; the laws permitting forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate drug trafficking offenses; and money laundering investigations.  I have become familiar with the types and amounts of profits made by dealers and distributors of controlled substances, and the methods, language, and terms which are used to disguise the source and nature of the profits from their illegal drug trafficking.  I have received additional formal training from the Oregon Narcotics Enforcement Association (ONEA), the International Narcotics Investigations Association (INIA), and the El Paso Intelligence Center's JETWAY Interdiction Training program, which all focused on drug and bulk cash smuggling occurring within mass transportation systems.

4.      Prior to being employed with the FBI, I was employed by the City of Cheyenne, Wyoming as a Police Officer for approximately seven years.  During that time, I obtained a Professional Peace Officer certification through the Wyoming Police Officer's Standards Board. To obtain this certification I was required to complete over 1000 hours of law enforcement training. This training included, but was not limited to, legal process, narcotics investigations, narcotics identification, narcotics interdiction techniques, and interview and interrogation techniques.

5.      I have participated in numerous narcotics investigations and search warrants seeking evidence of violations of Title 21 and Title 18 of the United States Code and violations of Chapter 475 (Controlled Substances) of the Oregon Revised Statutes (ORS).  These warrants

**Declaration of Ryan E. Parton**                                    **EXHIBIT A   PAGE 2**

covered the search of locations to include: electronic communication devices; residences of drug

traffickers and their co-conspirators/associates; drug manufacturing operations; and stash houses

used as storage and distribution points for controlled substances and/or drug trafficking proceeds.

## BACKGROUND ON NARCOTICS PROCEEDS TRANSPORTED THROUGH AIRPORTS

6.    I know from my training and experience that drug traffickers transporting narcotics

proceeds will frequently use airports to transport proceeds to a source city in order to purchase

controlled substances, including marijuana, cocaine, heroin and methamphetamine.  I know from

my training and experience that subjects trafficking narcotics proceeds often use airports to

transport proceeds because of the speed of travel, the ability to maintain custody of the proceeds,

and the low detection rate by law enforcement. I know from training and discussions with other

law enforcement officers that these controlled substances and proceeds of the illegal sale of

controlled substances are often found during airport interdictions.

7.    Based on my experience, training, and discussions with other law enforcement

officers experienced in drug investigations, I know Oregon is a marijuana source state for

destination locations across the United States.  Current Oregon state laws permitting the

recreational and medical growth, purchase, and possession of marijuana provide individuals with

significant quantities of marijuana, which can be illegally shipped to other states where marijuana

is illegal or less available in order to derive substantially increased profits.

8.    Based on my experience, training and discussions with other law enforcement

officers experienced in drug investigations, I know that certain indicators exist when drug

traffickers book airline travel for the purpose of purchasing narcotics. These travel indicators are

inconsistent with normal travel and would only be justified under extraordinary circumstances.

**Declaration of Ryan E. Parton**                                    **EXHIBIT A   PAGE 3**

9.      I know from my training and experience that drug traffickers will book their airline travel the same day or several days before their travel. This is often done because the availability of narcotics and narcotics proceeds changes on short notice. Drug traffickers have narrow windows to conduct drug transactions when a source of supply obtains narcotics. Otherwise the source will find another buyer.

10.     I know from my training and experience that drug traffickers will book one-way travel or have short turn around flights. This is commonly done because drug traffickers are delivering narcotics proceeds to their source of supply (and do not require a lot of time at their destination) or the drug trafficker is planning on transporting the purchased narcotics by car/train back to their originating city.

11.     I know from my training and experience that drug traffickers will transport their narcotics proceeds in carry-on or checked bags or concealed within natural voids inside checked luggage. Drug traffickers know that law enforcement passenger and luggage screening is most thoroughly done when passengers are entering the airport terminal and that there is less stringent screening of checked luggage. Therefore, in my experience, the larger seizures of narcotics proceeds found in airports are typically concealed within checked baggage. Drug traffickers believe that their greatest threat for detection of narcotics proceeds within checked bags is from x-ray screening. For that reason, drug traffickers will wrap currency in mylar to prevent detection by x-ray machines.

12.     I know from my training and experience that, when contacted by law enforcement, drug traffickers carrying narcotics proceeds will be deceptive about the amount of currency they are carrying.  Drug traffickers usually underestimate or are evasive about the quantity of the currency they are carrying because they are aware law enforcement can seize narcotics proceeds.

**Declaration of Ryan E. Parton**                                    **EXHIBIT A    PAGE 4**

Drug traffickers usually believe that if they are in possession of a lesser amount of currency that it is less likely to be seized by law enforcement.  It is common for drug traffickers carrying narcotics proceeds to change their statements regarding the amount of currency that they are carrying several times.

## SUMMARY OF INVESTIGATION

13.    On November 28, 2017, members of the PDX-TF were conducting standard interdiction operations at Portland International Airport.  This specific interdiction operation focused on passengers arriving on an American Airlines flight which originated in Los Angeles, California and arrived in Portland, Oregon at approximately 2355 hours.

14.    During this operation, PDX-TF investigators Lance Hemsworth, Timothy Osorio, and I were in civilian clothing.  Multnomah County Sheriff's Office K9 Deputy Bobby O'Donnell was also wearing civilian clothing but with his department issued police vest with markings and badge.  Deputy O'Donnell's police K9 "Spencer" also wore a vest which prominently displayed "Sheriff's K9."

15.    At approximately 2355 hours Deputy O'Donnell began contacting passengers deplaning from the American Airlines flight and asked for consent to allow K9 Spencer to "sniff" the luggage carried by the passengers.  K9 Spencer sniffed approximately 35 bags with no alerts.

16.    As I observed and as recorded in Deputy O'Donnell's official police report, while sniffing a backpack, Deputy O'Donnell observed behaviors from K9 Spencer which he identified as K9 Spencer alerting to the odor of narcotics.  Deputy O'Donnell's police report states the following:

> While sniffing a backpack, K9 Spencer's tail began to wag rapidly and his breathing became more focused and intense.  I've only seen this behavior from him during certifications, training, and field deployments where the presence of drug odor was

**Declaration of Ryan E. Parton**                                    **EXHIBIT A   PAGE 5**

confirmed.  K9 Spencer "sucked and purged" on the backpack.  He then sat down quickly behind the passenger.  It was like he was shocked with a jolt of electricity. I have seen this change in behavior and that final response to the odor of drugs, thousands of times in both training and "real life" deployments.

17.     Deputy O'Donnell immediately notified PDX-TF investigators of the alert. Following the alert and notification, Deputy O'Donnell continued his deployment and sniffed the luggage of an additional 10 passengers with no noticeable change of behavior in K9 Spencer.

18.     PDX-TF investigators Hemsworth, Osorio, and I contacted the person in physical control of the luggage K9 Spencer alerted to.   Investigators identified themselves as law enforcement and informed the passenger investigators contacted him based on the K9 alert on his carry-on luggage.  The passenger was identified as Gary Jones.  A short non-custodial interview of Jones was conducted.  During the interview, Jones informed investigators that he was a recreational marijuana user and had marijuana wax contained within his carry-on luggage.  Jones consented to the search of his luggage.  As indicated by Jones, investigators recovered a small amount of marijuana wax.

19.     During the interview, Jones was further asked about the nature of his visit to Oregon.  Jones stated he was here to work.  Jones was unable to provide any further information as to the nature or location in which the work would occur.

20.     While interviewing Jones, investigators were approached by an adult male who was later identified as Raul Mariscal.  Mariscal informed investigators he was traveling with Jones. Investigators informed Mariscal about the nature of the contact with Jones and the mission of the PDX-TF: to identify passengers traveling with narcotics, contraband, weapons, and/or proceeds of money laundering.  Investigators asked Mariscal if he was traveling with any of the specified items. Mariscal informed investigators he was traveling with a large amount of U.S. currency.

**Declaration of Ryan E. Parton**                                    **EXHIBIT A   PAGE 6**

21.     Detective Osorio also asked Mariscal how much currency he was carrying. Mariscal initially stated $5,000, but later stated the amount was closer to $9,000. Mariscal was asked what the purpose of the currency he was transporting was. Mariscal stated it was for a building contracting job his company was hired to do. Mariscal was asked if he had any paperwork that would confirm his claim. Mariscal provided an invoice titled "Advance to TCM." The invoice had a total amount of $5,740.36 for airline tickets, car rental, and lodging expenses. Mariscal was asked if the currency he was transporting was to pay for the expenses billed in the invoice. He initially stated it was, but then stated that the currency he was transporting was to cover additional costs. Mariscal was unable to provide documentation for these additional costs.

22.     Mariscal identified his employer as "Canna Panels" and identified his supervisor as "Brian Mitchell." Mariscal provided officers with a phone number for Mitchell. Investigators attempted to contact Mitchell to validate Mariscal's claims, but were unable to reach him.

23.     Mariscal was asked about the nature of his visit to Oregon. Mariscal stated he came to Oregon for work, however was unable to provide any details as to the nature of the work or the location in which the work was to occur, other than "Beaverton."

24.     Investigators noticed Mariscal had no carry-on luggage and asked if he had checked luggage. Mariscal stated he did not. Mariscal was also asked how long he planned to stay in Oregon. Mariscal stated he did not know. When asked about the lack of clothing items, Mariscal stated he was going to purchase anything he needed during his stay.

25.     I know from my training and experience that often persons involved in drug trafficking activities will bring minimal clothing and personal hygiene items, if any, on quick turn-around trips to purchase or deliver narcotics.

**Declaration of Ryan E. Parton**                              **EXHIBIT A   PAGE 7**

26.     During the interview Mariscal stated he did not participate in the sale, production, or use of marijuana.

27.     Investigators asked Mariscal to see the currency he was transporting. He retrieved an envelope from his wallet.  I immediately saw that the currency was in different denominations, including smaller denominations. Mariscal was asked if all the currency he was transporting belonged to his employer. He initially stated it was, and then stated that some of it was his own spending money. Mariscal was unable to provide documentation from his employer regarding the currency he had.  In addition, Mariscal did not have a check, invoice, or a business credit card for additional work related expenses.

28.     Mariscal was asked if he had any communications on his cell phone, such as an email or text, between him and his employer that would verify his story. Mariscal stated he did not. Detective Osorio asked for consent to view Mariscal's current texts and pictures on his cell phone.  Mariscal allowed Detective Osorio to view the requested information.

29.     Detective Osorio's police report documented the following observations.  The photos captured from Mariscal's phone are also included below:

> I observed a text communication between Mr. Mariscal and "Cannapanels Brian" at "323-420-9766". This was the same number that Mr. Mariscal had provided to me as belonging to his employer "Brian Mitchell". In the text conversation I observed several pictures of bulk raw marijuana. I also observed a text stating "I'm willing to get these out the door for really whatever it takes to move. I already have another one in six weeks". There was a picture of raw marijuana prior to this conversation. In addition, I found a text conversation between Mr. Mariscal and "Cannapanels Brian" stating "If those guys wanted it at 1000 I'm down. Just need to get rid of it. Thanks for trying bro. Sorry I'm so busy at the moment".



**Declaration of Ryan E. Parton**                    **EXHIBIT A   PAGE 9**







30.    Detective Osorio asked Mariscal why he had pictures of bulk raw marijuana, and

what appeared to be a conversation of the sale of bulk marijuana on his cell phone.  Mariscal could

not provide an answer.  Detective Osorio asked Mariscal if the text indicating the "1000" referred

to the sale of marijuana.  Mariscal stated it did.

31.    At approximately 0020 hours on November 29, 2017, Deputy O'Donnell was asked

to "run" the cash that was found on Mariscal's person.  Prior to running K9 Spencer on the target

**Declaration of Ryan E. Parton**                                                    **EXHIBIT A   PAGE 12**

bags, I set up a "line" of bags in similar size and appearance.  The bags were placed on the ground outside of gate C22. Deputy O'Donnell used K9 Spencer to "proof" the bags, the area and a bag containing $84.00 in circulated U.S. Currency.  K9 Spencer had no change of behavior during that deployment.

32.    With no alerts to the blank bags, circulated U.S. Currency or the areas where the deployment occurred, I set a "line" in the same areas.  I placed the target bag, which contained Mariscal's currency, in a random spot in the "line" that would be unknown to both Deputy O'Donnell and K9 Spencer.  Deputy O'Donnell ran the "line-up blind," meaning that he did not know the location of the subject U.S. currency.  I also stood out of Deputy O'Donnell's field of view to avoid him "cuing" or K9 Spencer.

33.    At approximately 0025 hours, Deputy O'Donnell deployed K9 Spencer on the line up.  Deputy O'Donnell recorded the results in his official police report as follows:

> As he approached bag #5, I saw K9 Spencer have a change of behavior. His tail began to wag rapidly and his breathing became more focused and intense. I've only seen this behavior from him during certifications, training and field deployments where the presence of drug odor was confirmed.
>
> As he smelled the air coming from bag #5, I heard him "suck and purge" and then sit down quickly like he was shocked with a jolt of electricity. I have seen this change in behavior and that final response to the odor of drugs thousands of times in both training and "real life" deployments. I "paid" K9 Spencer with his jute toy. I advised Agent Parton of the alert to bag #5. I was told that bag was the target bag. It should be noted that the bag containing the circulated U.S. Currency was in position #3.

34.    Based on the totality of the circumstances, the information learned from interviewing Mariscal, and the information observed within Mariscal's cell phone, I believed the currency was proceeds from illegal activity and/or was used or intended to be used to facilitate illegal activity.  The currency was administratively seized by the FBI and Mariscal was issued a receipt for the seized currency.

**Declaration of Ryan E. Parton**                                        **EXHIBIT A   PAGE 13**

## CONCLUSION

35.     Based on the foregoing information, I have probable cause to believe, and do believe, that the $9,222 in U.S. currency seized from Raul Mariscal is subject to forfeiture pursuant to 21 U.S.C. §881(a)(6), as moneys furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate violations of 21 U.S.C § 801, *et. seq*.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 13th day of February 2019.


*s/ Ryan E. Parton*
RYAN E. PARTON
Special Agent
Federal Bureau of Investigation


**Declaration of Ryan E. Parton**                                              **EXHIBIT A   PAGE 14**

🖉 JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

## DEFENDANTS

**(b)**  County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                      and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V.  ORIGIN   (Place an "X" in One Box Only)

☐ 1   Original
Proceeding
☐ 2   Removed from
State Court
☐ 3   Remanded from
Appellate Court
☐ 4   Reinstated or
Reopened
☐ 5   Transferred from
another district
(specify)
☐ 6   Multidistrict
Litigation
☐ 7   Appeal to District
Judge from
Magistrate
Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**     ☐ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

(See instructions):

JUDGE                      DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____